IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-02584-REB-BNB

ABEER FARAGALLA

Plaintiff,

v.

DOUGLAS COUNTY SCHOOL DISTRICT RE1 "DCSD,"
CEREBRAL PALSY OF COLORADO "CP,"
DOUGLAS COUNTY EDUCATION FOUNDATION, and
DOUGLAS COUNTY SCHOOL DISTRICT BOARD OF EDUCATION "BOE,"

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Defendant Cerebral Palsy's Second Motion for Summary Judgment** [Doc. #152, filed 01/23/2009] (the "Motion").  I respectfully RECOMMEND that the Motion be GRANTED.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe her pleadings.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  Rule 56(c), Fed.R.Civ.P., provides that summary judgment should be rendered

"if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  UNDISPUTED MATERIAL FACTS

1.  The plaintiff's employment with defendant Cerebral Palsy of Colorado, Inc. ("CP") was terminated in December 2002. *Motion*, p. 2 ¶ 1.

2.  Dana Neal, the Human Resources Director of CP, is the person to whom any requests for information on former CP employees would be directed. Id. at Ex. C, ¶¶ 2, 4.

2

3.   No potential employer spoke to Ms. Neal, CP's president, or others in CP's human resources department regarding the plaintiff. Id. at ¶ 4-5.

The plaintiff filed her Third Amended Title VII Complaint [Doc. #59] (the "Complaint") on May 22, 2008.  The Complaint asserts twelve claims against the defendants.  Only Claim Ten is asserted against defendant CP.  Claim Ten alleges that CP provided negative information and references regarding the plaintiff to prospective employers in violation of 42 U.S.C. § 2000e ("Title VII") and 42 U.S.C. § 1981.  Claim Ten also alleges that CP's actions constituted the state law torts of defamation and "intentional infliction of harm and distress."[1]  *Complaint*, pp. 9-10[2];  *Scheduling Order* [Doc. #62], § 3(3).

### III.  ANALYSIS

### A.  Title VII and § 1981

Title VII prohibits retaliation against individuals who oppose discriminatory employment practices or participate in complaints or investigations of employment practices prohibited by Title VII.  42 U.S.C. § 2000e-3(a).  The protections of Title VII apply to former employees as well as current employees.  Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997).

Section 1981 prohibits intentional race discrimination in the making and enforcement of contracts with both public and private actors.  42 U.S.C. § 1981.  The statute's protection extends to the "making, performance, modification, and termination of contracts, and the

---

[1]To the extent the plaintiff attempts to bring other claims, those claims are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

[2]The plaintiff does not consecutively paginate the Complaint.  Therefore, I refer to the page numbers of the Complaint as assigned by the court's docketing system.

enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id.

at 1981(b).

A retaliation claim as asserted here, with no direct evidence of retaliation, is analyzed

under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-

04 (1973). Somoza v. University of Denver, 513 F.3d 1206, 1211; Stover v. Martinez, 382 F.3d

1064, 1070 (10th Cir. 2004). In particular:

> Following this framework, an employee must first present a prima
> facie case of retaliation, which then shifts the burden to the
> employer to produce a legitimate, nondiscriminatory justification
> for taking the disputed employment action. If the employer
> provides a legitimate, non-discriminatory justification for the
> action, the burden shifts back to the employee to provide evidence
> showing that the employer's proffered reason is a pretext for
> discrimination.

Stover, 382 F.3d at 1070-71.

The plaintiff bears the burden of establishing a *prima facie* case of retaliation. Sanchez

v. Denver Public Schools, 164 F.3d 527, 533 (10th Cir. 1998). To establish this *prima facie* case

under both Title VII and section 1981, a plaintiff must establish that: (1) she engaged in

protected opposition to discrimination; (2) she suffered an employment action that a reasonable

employee would have found materially adverse such that they might be dissuaded from making a

charge of discrimination; and (3) there is a causal connection between the protected activity and

the employment action. Somoza, 513 F.3d at 1212.

A negative reference given by a former employer to a prospective employer can be a

retaliatory adverse employment action. Rutherford v. American Bank of Commerce, 565 F.2d

1162 (10th Cir. 1977); Equal Employment Opportunity Commission v. L.B. Foster Co., 123 F.3d

746, 753-54 (3rd Cir. 1997).

The parties do not dispute that the plaintiff engaged in protected opposition to discrimination.  The defendant, however, asserts that it did not take any materially adverse employment actions against the plaintiff.  *Motion*, pp. 4, 5.

The defendant relies on the Affidavit of Dana Neal, CP's Human Resources Director from the time the plaintiff was first employed by CP to the present.  *Motion*, Ex. C, ¶ 2.  Ms. Neal attests that it is CP's policy to direct to her for response any inquiries for information regarding former CP employees.  Id. at ¶ 4.  Ms. Neal has not responded to any request from any person seeking information about the plaintiff since her employment with CP ended.  Id. at ¶ 5. In addition, Ms. Neal has determined that no other person at CP has responded to any request from anyone seeking information about the plaintiff since her employment with CP ended.  Id. at ¶¶ 4-5.[3]

The plaintiff submitted an affidavit and several emails in an attempt to create a material factual dispute regarding whether CP provided negative information and references to prospective employers.  Her affidavit is rambling and confusing and contains very few admissible factual statements.  In general, the affidavit states:

1.  After the plaintiff's termination from CP and after she filed an EEOC charge for discrimination, she actively applied for jobs.  An unidentified person at an unidentified entity[4] asked her if she "really thought [she] could ever work again in schools in Colorado after [she] sued CP."  *Plaintiff's Response to CP's Motion for Summary Judgment* [Doc. #181] (the "Response"), Ex. 5, p. 1, ll. 18-21.

---

[3]Responses to the EEOC and discovery responses in this case are excepted.  Id. at ¶ 5.

[4]The plaintiff thinks the unidentified entity may have been Aurora public schools.

2.   The plaintiff secured a job in Michigan at the Arab American Center for Social and Economic Services.  Her supervisor asked her if she was really a Christian.  When she asked the supervisor "how did [you] learn that," the supervisor asked her if she "had told this to [her] former employer just to keep [her] job or if [she is] really Christian."  The plaintiff "can't remember the exact conversation, the exact words or the exact context" of the conversation, but she does "recall the shock [she] had from this information."  She thinks that the conversation started when she brought up an incident where a girl sang hallelujah to her and she wondered why the girl would think she was a Christian.  Id. at ll. 22-29.

3.   The plaintiff next worked for "Cherry Creek."  In her first week of employment, the plaintiff was told that another employee would not work with her.  The plaintiff does not recall the details of the conversation.  When she asked her supervisor "what was going on," her supervisor replied that "they don't trust or respect [the plaintiff]."  The plaintiff asked "why." The supervisor replied "why do you think that is for Abeer, is it Aurora, is it Greeley or is it head start?"  The plaintiff did not directly question the supervisor "about that CP comment or even to push on her to say it more directly."  The plaintiff "was too scared to hear it."  Id. at p. 2, ll. 5-18. She tried to focus on her job, but "got fed up" and emailed her supervisor and "literally asked her where does she get this information from."  The supervisor "never gave [her] a straight answer." Id. at ll. 23-26.   The plaintiff asked for and received a transfer.  She felt she needed a break, however, and resigned.  Id. at p. 2, l. 31 - p. 3, l. 1.

4.   The plaintiff started a journey into cognitive behavioral therapy and "this self healing strategy."  She "engaged in the most intensive of therapy and by the time [she] took the Iron horse Job, [she] was healed."  On the first day of the job, however, she learned that it was going

6

to be the "same old same," and CP would haunt her forever.  She ignored the harassment and

kept on working.  But she knew that CP was still "releasing some protected information on [her].

    5.   After the plaintiff lost her job at DCSD, she applied for almost one hundred jobs.  In

connection with her efforts to obtain employment, the plaintiff states:

> From the first day on the job, however I learned that it is gong to
> be "same old same".  CP will haunt me forever. . . .  I knew that
> CP is still releasing some protected information on me, because
> Dickman for example couldn't have known that I complained for
> not being shown around by Amy on my first day.  This wasn't
> even one of the things I stated in my EEOC complaint; somebody
> from within CP released that, when Nelson talked about what she
> heard before, I did feel that she was talking about CP because CP
> is the only employer I had ever accused of discrimination before
> DCSD.
>
> After I lost my job at DCSD, I applied for several posting,
> amounting to almost a hundred.  More than one employer
> expressed an interest in hiring me, but asked me who fired me and
> why, and I stated that it was CP and DCSD and that it was because
> of filing a charge of discrimination.  They all asked for reference
> and for information on former employers, and all indicated that
> they would contact them.  Yet they never called back.  When I
> contacted those employers, all HRs denied contacting references,
> saying that I was not recommended for hire.  However, I had
> already been informed by the interviewers that I was recommended
> for hire.  Since those employers have obviously changed their
> mind about hiring me and even gave inaccurate answers as to why,
> only after they had requested information on DCSD and on CP,
> since CP released protected information on me before, and since
> Dickman told me about education being the name of the game, and
> about their plan to do this again and again, as long as I work in
> education, I firmly believe that DCSD and CP is retaliating against
> me by providing false negative references about me to others and
> that this information is causing other employers to change their
> mind about me.
>
> I filed an EEOC charge.  However, after I filed the charge, and
> when I was producing those emails to DCSD I have noticed that
> emails, which were sent by potential employers in response to my
> inquiries, say no to contacting references only, not to contacting

employers. I even underlined this information in that Exhibit; this observation triggered me to call those employers again. However, they still didn't give a straight "no' to the question of have you contacted employers, but gave a clear no to not contacting references. All these facts lead me to believe that CP has been viciously retaliating against me all those years to the extent that ruined my employability and my reputation and that there is no end to its relentless retaliatory motive, no matter how hard I try, they simply won't stop.

*Response*, Ex. 5, p. 3 ll. 8-34.

Affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. <u>Murray v. City of Sapulpa</u>, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." <u>Id.</u> The plaintiff has failed to provide any specific factual allegations or other evidence refuting the affidavit of Dana Neal that no potential employer of the plaintiff contacted CP regarding her, and the plaintiff has failed to create a material fact dispute regarding whether CP provided prospective employers with negative information. Instead, the plaintiff's affidavit is filled with incomplete and confusing accounts of past employment experiences from which she assumes and surmises wrongdoing by CP.

The plaintiff also provided copies of three emails. *Response*, Exs. 1-3. The plaintiff has not established the authenticity of the emails, however, nor has she demonstrated the applicability of a hearsay exception which would allow them to be admitted into evidence. Even if the emails are admissible, however, they support CP's evidence that CP was not contacted by any of the plaintiff's prospective employers.

The first email is from the Aurora Public Schools Human Resources Department and is in response to the plaintiff's inquiry for "detailed information you have been provided by my

previous employers and by my references." *Response*, Ex. 1.  Aurora Schools replied that "reference calls were not conducted because you have not been recommended for hire as of yet. Your references will only be called upon recommendation for hire."  Id.

The second email is from the Human Resources Department of an entity with the initials "DPS."  In response to the plaintiff's inquiry, DPS stated: "Believe me . . . they (DPS) do not check ANY references until they've offered you employment.  There are too many jobs and too many candidates to call references or view the entire application for candidates.  The only page they print out is your resume."  Id. at Ex. 2 (emphasis in original).

The third email concerns an application with an entity with the initials "LPS."  In response to plaintiff's request for "all the information you gathered about me from my previous employers," LPS replied "[t]he only information that we have about you is what you have provided in your application and what you have stated in the last few e-mails.  We have no knowledge of any information gathered from your previous employers."  Id. at Ex. 3.

Viewing the evidence in the light most favorable to the plaintiff and affording the plaintiff the benefit of all reasonable inferences to be drawn from the evidence, the plaintiff has failed to provide any evidence refuting Dana Neal's sworn statement that CP had not "responded to any request from any person seeking information about [the plaintiff] since her employment with CP ended."  *Motion*, Ex. C, ¶5.  Consequently, she has failed to create a material fact dispute regarding whether she suffered an employment action that a reasonable employee would have found materially adverse such that they might be dissuaded from making a charge of discrimination.  Because the plaintiff has not established this element of her *prima facie* case, I

respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks summary

judgment in favor of CP on Claim Ten's allegations of violations of Title VII and section 1981.

## B.   State Law Torts

The plaintiff also claims that CP's actions in providing negative information and

references constitutes defamation and intentional infliction of emotional distress.  In order to

state a claim for defamation under Colorado state law, the plaintiff bears the burden of proving a

*prima facie* case. DiLeo v. Koltnow, 613 P.2d 318, 323 (Colo. 1980).   She must show:

> (1) a defamatory statement concerning another; (2) published to a
> third party; (3) with fault amounting to at least negligence on the
> part of the publisher; and (4) either actionability of the statement
> irrespective of special damages or the existence of special damages
> to the plaintiff caused by the publication.

Williams v. District Court, 866 P.2d 908, 912, n.4 (Colo. 1993).

Colorado recognizes the tort of intentional infliction of emotional distress by outrageous

conduct and has approved the definition of this tort as set out in the Restatement (Second) of

Torts § 46 (1965):

> One who by extreme and outrageous conduct intentionally or
> recklessly causes severe emotional distress to another is subject to
> liability for such emotional distress, and if bodily harm to the other
> results from it, for such bodily harm.

Rugg v. McCarty, 476 P.2d 753, 756 (Colo. 1970).

"Liability has been found only where the conduct has been so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community." Id.

The alleged defamatory statement and the alleged outrageous conduct are based on the

plaintiff's belief that CP provided negative information and references to prospective employers.

Because the plaintiff has failed to produce any evidence disputing CP's affidavit that it provided no negative information and references, I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks summary judgment in favor of CP on Claim Ten's allegations of defamation and intentional infliction of emotional distress.

## IV.   CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED and that summary judgment enter in favor of CP and against the plaintiff.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated August 10, 2009.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge