IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-02584-REB-BNB

ABEER FARAGALLA

Plaintiff,

v.

DOUGLAS COUNTY SCHOOL DISTRICT RE1 "DCSD,"
CEREBRAL PALSY OF COLORADO "CP,"
DOUGLAS COUNTY EDUCATION FOUNDATION, and
DOUGLAS COUNTY SCHOOL DISTRICT BOARD OF EDUCATION "BOE,"

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Defendant Douglas County Federation for Classified Employees' Revised Motion for Summary Judgment** [Doc. #149, filed 01/23/2009] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

### I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe her pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment should be rendered

"if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." Id.

## II.  UNDISPUTED MATERIAL FACTS

1.  The plaintiff worked as a special education Educational Assistant for the Douglas County School District ("DCSD") from August 2005 through May 11, 2007.  *Motion*, Exs. A-1 and A-2.

2.  When her employment was terminated, the plaintiff filed a grievance under the collective bargaining agreement between the Douglas County Federation for Classified Employees (the "Union")[1] and DCSD, and she contacted the Union about representation.  Id. at Second Affidavit of Brenda Smith (first attachment to the Motion) ("Ex. A"), ¶ 2.

3.  The Union did not represent the plaintiff in her "Level III" hearing before the superintendent.  Id. at ¶ 3.  This is the first step in the grievance/arbitration procedure in the event of a termination.  Id.  A Level III hearing does not require union involvement.  Id.

4.  The Union considered whether to demand a "Level IV" arbitration on the plaintiff's behalf but concluded that the case had an insufficient probability of success to justify pursuing it. Id. at ¶ 5.

The plaintiff filed her Third Amended Title VII Complaint [Doc. #59] (the "Complaint") on May 22, 2008.  The Complaint asserts twelve claims against the defendants.  Only Claim Eleven is asserted against the Union.  Claim Eleven alleges that the Union refused to arbitrate the plaintiff's claims because she asserted discrimination and retaliation which rendered the claims "weak."  *Complaint*, ¶ 45.  The plaintiff asserts that the Union's refusal to arbitrate her claims violated 42 U.S.C. §§ 1981 and 1982; the Fifth and Fourteenth Amendments of the United States Constitution; 42 U.S.C. § 2000e ("Title VII"); the National Labor Relations Act;

---

[1]The plaintiff refers to the Union as "DCFCE."

"Colorado labor relation law"; the Colorado Labor Peace Act; and the state law torts of "breach of contract, negligent misrepresentation, intentional infliction of distress, [and] breach of fair representation duty."[2]  Id.  She seeks compensatory damages in the amount of $400,000.00 and punitive damages in the amount of $550,000.00.  Id. at ¶ 49.

### III.  ANALYSIS

#### A.  Constitutional Claims

The plaintiff asserts that the Union's refusal to arbitrate her claims violated the Fifth and Fourteenth Amendments of the United States Constitution.  This claim is necessarily brought pursuant to 42 U.S.C. § 1983.  See Tafoya v. Adams, 816 F.2d 555, 558 n.5  (10th Cir. 1987).  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Section 1983 limits liability to the actions of the government and its agents.  Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1446-47 (10th Cir. 1995).  Therefore, the plaintiff must demonstrate that the Union was acting under color of state law.

Labor unions generally are not considered state actors absent some evidence that they acted in concert with the state.  Montgomery v. City of Ardmore, 365 F.3d 926, 942 (10th Cir.

---

[2]To the extent the plaintiff attempts to bring other claims, those claims are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

2004). The Tenth Circuit has identified four tests to determine whether conduct constitutes state action: (1) the nexus test; (2) the symbiotic relationship test; (3) the joint action test; and (4) the public functions test. Gallagher, 49 F.3d at 14448-57.

In her response to the defendant's Motion, the plaintiff states only the following:

> My complaint sufficiently implied conspiracy between DCFCE and DCSD, which is proven by Ex 3 and by the McGee statement: Ex 1, ¶ 19, and which can be supported by the Union's controversial support of DCSD's position: Ex 1 ¶ 20-27. DCFCE acted in color of state law when it conspired with DCSD to discharge me and to effect DCSD's discriminatory purpose.

*Plaintiff's Revised Response to DCFCE's Summary Judgment Motion* [Doc. #265] (the "Response"), ¶ 40.

Contrary to the plaintiff's assertion, the Complaint does not contain any factual allegations which support an implication of state action by the Union. The plaintiff's Exhibit 3 is an email to the plaintiff from Tiffany Osland, Classified VP for the Union, which states:

> I apologize for not responding to your emails sooner. I was out of the office Monday, the 14th. We were informed of your situation by HR, but were not involved. I would like to point out that you were not a union member at the time of your employment and as such, the DCF is not obligated to investigate any aspect of your termination.

*Response*, Ex. 3.

Ms. Osland's email does not prove that the Union was working in concert with the state and was, therefore, a state actor. To the contrary, it supports an inference that the Union was not involved in the plaintiff's situation at DCSD.

The plaintiff also relies on paragraph 19 of Exhibit 1 (her affidavit) to prove concerted action between the Union and DCSD. In paragraph 19, she states:

> I met with McGee on or about the first week of April, and complained of discrimination, retaliation and harassment. When I asked for union intervention, she said that the Union knows of my situation and that their only role is to ensure that DCSD follow due process when firing me and that they did that. After McGee gave me Ex 33[3], I went to the superintendent's office to schedule a meeting with him, when I ran into him and asked him to meet with me. He said that he'd get back to me, but he never did, and issued Ex 41[4] in 48hours! I was fired in 5/11/07.

*Response*, Ex. 1, ¶ 19 (emphasis deleted).

These statements do not prove that the Union acted in concert with DCSD to deprive the plaintiff of her constitutional rights. As with Ms. Osland's email, they tend to disprove any concerted action by showing that the Union's role was limited to ensuring that DCSD provided due process when terminating the plaintiff's employment.

The plaintiff also refers to paragraphs 20-27 of the affidavit as evidence to support a finding of concerted action between the Union and DCSD. However, those paragraphs do not contain any factual allegations to support a finding that the Union acted in concert with DCSD to deprive the plaintiff of her constitutional rights.

I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks summary judgment in favor of the Union on the plaintiff's constitutional claims.

---

[3] Exhibit 33 is a letter to the plaintiff from Debbie McGee, Director of Human Resources at DCSD, informing the plaintiff that McGee found the plaintiff's allegations of discrimination and harassment to be unsubstantiated.

[4] Exhibit 41 is a letter to the plaintiff from Dr. James Christensen, Superintendent of DCSD, informing her that he is in agreement with the findings surrounding her performance issues and allegations of discrimination and harassment at Iron Horse Elementary School.

### B. The National Labor Relations Act

Claim Eleven also alleges that the Union's actions violated the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 152 *et seq*. The NLRA governs relations between private sector employers engaged in interstate commerce, their employees, and labor unions representing their employees. The Act specifically excludes as employers states and their political subdivisions. 29 U.S.C. § 152(2) (1998). Because the plaintiff was employed by a political subdivision of the state, her claim is not governed by the NLRA. I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment on the plaintiff's NLRA claim.

### C. Colorado Labor Peace Act

Claim Eleven also alleges that the Union's activities violated the Colorado Labor Peace Act, C.R.S. § 8-3-101 *et seq*. This Act also specifically excludes as employers states and their political subdivisions, with exceptions not applicable in this case. Section 8-3-104(12), C.R.S. Accordingly, the plaintiff's claim is not governed the Colorado Labor Peace Act. I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment on the plaintiff's claim pursuant to the Colorado Labor Peace Act.

### D. Discrimination Claim under 42 U.S.C. § 1982

The plaintiff asserts that the Union's actions violated 42 U.S.C. § 1982 "in that I unduly lost the personal property in job." *Complaint*, ¶ 45. The defendant, citing Salguero v. City of Clovis, 366 F.3d 1168 (10th Cir. 2004), states that the Tenth Circuit Court of Appeals follows the burden shifting analysis announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in analyzing a discrimination claim brought under 42 U.S.C. § 1982. However, Salguero does

not address claims brought under section 1982; instead, it addresses claims brought pursuant to sections 1981 and 1983.

Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." "Section 1982 was enacted to enable Congress to enforce the Thirteenth Amendment and, particularly, to prohibit all racial discrimination, private and public, in the sale and rental of property." Morris v. Office Max, Inc. 88 F.3d 411, 413 (7th Cir. 1996) (citing Jones v. Alfred H. Mayer Co., 392 U.S. 409, 437 (1968)).

The Complaint does not contain any allegations (other than the conclusory allegation quoted above) and the record does not contain any evidence that would invoke section 1982. I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks summary judgment on the plaintiff's claim under 42 U.S.C. § 1982.

### E. Discrimination Claims Under Title VII

The plaintiff asserts that the Union violated Title VII when it refused to arbitrate her claims because the claims asserted discrimination and were "weak." The defendant responds that the plaintiff's Title VII claim must be dismissed because she never filed a charge against the Union with the EEOC. *Motion*, pp. 8-10.

Exhaustion of administrative remedies is a jurisdictional prerequisite to bringing an action in federal court under Title VII. Woodman v. Runyan, 132 F.3d 1330, 1341 (10th Cir. 1997). "The party seeking to invoke the jurisdiction of a federal court must prove that the case is within the court's subject matter." Henry v. Office of Thrift Supervision, 43 F.3d 507, 512 (10th Cir. 1994). To exhaust administrative remedies, a putative plaintiff must present her claim

to the EEOC in a timely-filed charge of discrimination for which she receives a right-to-sue letter. Simms v. Oklahoma ex. rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999). "Each discrete incident of [discriminatory] treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted." Martinez v. Potter, 347 f.3d 1208, 1210 (10th Cir. 2003).

The "omission of a party's name from the EEOC charge does not automatically mandate dismissal of a subsequent action under Title VII." Romero v. Union Pac. R.R., 615 F.2d 1303, 1312 (10th Cir. 1980). Relying on Glus v. G.C. Murphy Co., 562 F.2d 880 (3d Cir. 1977), the court in Romero stated that "Congress did not intend that a complainant must ascertain at the time of filing charges each individual in a company who might be involved in the alleged discriminatory practices." Romero, 615 F.2d at 1311. The Romero court was concerned with subject matter jurisdiction "under Title VII over the individual defendants notwithstanding the plaintiff's failure to name them in the EEOC charges filed against the Union and the Railroad." Id. Unlike both Romero and Glus, the defendant here contends that the plaintiff failed to name the Union in her EEOC charge; it does not contend that the plaintiff failed to name individual employees of the Union.

The court in Romero remanded the case with instructions that the district court consider the following four factors when determining whether the plaintiff had exhausted administrative remedies as to the individual defendants not named in the EEOC charge of discrimination:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for

9

> the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Id. at 1312.

The plaintiff does not dispute that she did not name the Union in her EEOC charge. Instead, she asserts that the Union's discriminatory actions were sufficiently alleged in her EEOC charges. *Response*, ¶¶ 29-32, 36-38. She refers to Exhibits 11-13 in support of this assertion. Id. at ¶ 36.

In particular, the plaintiff states that Exhibit 11 is part of the "Intake questionnaire filed with the EEOC on May 14, 2007," id. at ¶ 29, and that the contents of Exhibit 11 are sufficient to inform the EEOC that the plaintiff requested and was denied a Union investigation. Id. Exhibit 11 appears to be the final page of an EEOC questionnaire. Id. at Ex. 11. The last question on the questionnaire inquires whether the complainant has "sought help about this situation from a union, an attorney, or any other source?" The plaintiff checked the "YES" box and stated that she had "requested and was denied union investigation." Id. Contrary to the plaintiff's assertion, a fair reading of Exhibit 11 would not inform the EEOC that the plaintiff claimed that the Union had violated Title VII by refusing to arbitrate her claims against DCSD.

The plaintiff also relies on Exhibit 12 as informing the EEOC of her discrimination claim against the Union. Exhibit 12 is an affidavit the plaintiff filed with the EEOC on May 30, 2007. *Response*, ¶ 30. It consists of one page, which indicates that it is page 5 of 13. *Response*, Ex. 12. The final paragraph states:

> <u>I was denied the union's Intervention:</u>
> When I asked Debbie McGee for union's intervention, she stated that Union's only role is to make sure that due process is followed when terminating me and that Union is aware of my situation and that they will terminate me no matter what.  After being terminated, [w]hen I requested a board meeting, I was told by Brenda Smith, the Union President, that I need to contact the Union first, since there was no reason to fire me (email attached).  However, when I emailed the Union, they responded by stating that I was not a union member at the time of termination.  This contradiction in their representation of my membership status, reflect another discriminatory treatment on their behalf.

Id.

The plaintiff's assertion of discrimination based on the alleged inconsistent statements by Union representatives does not, without more, notify the EEOC of a complaint of discrimination against the Union based on national origin, race, and religion.  The accusation is conclusory; is asserted in a single sentence within a 13 page affidavit; and does not provide any factual basis from which to conclude that the Union discriminated against the plaintiff in violation of Title VII.

The plaintiff also relies on Exhibit 13 as notice to the EEOC of her claim of discrimination against the Union.  Exhibit 13 is the plaintiff's rebuttal statement to the EEOC which she submitted on August 10, 2007.  *Response*, ¶ 31.  It consists of two pages, apparently pages 6 and 8 of a nine page document.  Id. at Ex. 13.  Under the heading "**It proves dicriminatory intent to deny an employee the right to formal process of grievance**," the plaintiff states "[I] affirm that I was denied union intervention.  I was told that I am not a union member and that [the] union would wouldn't be able to get involved as proven by the attached emails."  Id. at Ex. 13, p. 1.  This statement does not fairly inform the EEOC that the plaintiff is charging the Union with discrimination in violation of Title VII.

The plaintiff further states that she submitted to the EEOC as a part of Exhibit 13 a copy of an email. *Response*, ¶ 31. She informed the EEOC in her rebuttal that the email "proves that employer is lying in their claim, stated in their response, that I was offered Union intervention. This further proves that Plaintiff was denied the right to Union Intervention and was denied the right to due process of grievance." Id. and Ex. 13, p. 2. The email is Exhibit 4 to the Response. Id. at ¶ 31. It is authored by Brenda Smith and is a response to a lengthy email from the plaintiff. Ms. Smith stated in the email: "Abeer - we are not denying you any rights. Because you are not a union member, we are not involved in this situation." Id. at Ex. 4. The email does not notify the EEOC that the plaintiff is charging the Union with discrimination in violation of Title VII, nor does it in any way infer that the Union refused to arbitrate her claims because her claims asserted discrimination.

The plaintiff asserts that the Union "represented that its relationship with me is through DCSD." *Response*, ¶ 37. She cites Exhibit 3 as supporting this assertion. Exhibit 3 is an email addressed to the plaintiff from Tiffany Osland, Classified VP for the Union, which states:

> I apologize for not responding to your emails sooner. I was out of the office Monday, the 14th. We were informed of your situation by HR, but were not involved. I would like to point out that you were not a union member at the time of your employment and as such, the DCF is not obligated to investigate any aspect of our termination.

*Response*, Ex. 3.

The email simply states that the Union was informed of the plaintiff's situation by the HR department of DCSD. That statement does not constitute evidence that the Union declined to have its own relationship with the plaintiff or that it would only communicate with her through DCSD.

12

The plaintiff also cites paragraphs 20-28 of her affidavit in support of her claim that the Union "represented that its relationship with me is through DCSD." However, the cited paragraphs describe conversations with Union officials that either declined to represent her before the Board of Education because she was not a member of the Union or tried to convince her to argue that she was fired for no reason instead of arguing that she was fired for discriminatory reasons. The statements contained in those paragraphs do not show that the Union represented that its relationship with the plaintiff was through DCSD. To the contrary, the record is filled with direct communications between the plaintiff and Union officials in which they attempted to resolve the issue of whether the Union would represent the plaintiff. There is no evidence that the Union required the plaintiff to seek Union representation through DCSD.

The Complaint alleges that DCSD discriminated against the plaintiff on the basis of her race, national origin, and religion when it denied her job opportunities (Claim Three); subjected her to different terms and conditions of employment (Claim Four); gave her a negative performance evaluation (Claim Five); denied her "due process to grievance" (Claim Six); terminated her employment (Claim Seven); and refused to compensate her for additional duties assigned to her as of June 2005 (Claim Nine). The plaintiff's Title VII claim against the Union is that the Union refused to arbitrate her claim because her claim contained allegations of discrimination against DCSD which made it "weak."

The plaintiff's claim of discrimination against the Union is a discrete incident of discriminatory treatment--separate from her claims of discrimination against DCSD. Her claim against the Union therefore constitutes a separate assertion of unlawful behavior for which the available administrative remedy must be exhausted. Martinez, 347 F.3d at 1210.

On the record before me, it appears that the plaintiff learned of the Union's position that it would not pursue a Level IV arbitration on her behalf based on the Union's determination that her claim of discrimination was weak "on or about August 2007." *Response*, Ex. 1, ¶ 24. Therefore, the behavior that the plaintiff complains of did not occur until after she filled out the EEOC Intake Questionnaire on May 14, 2007, and after she submitted her affidavit to the EEOC on May 30, 2007. Although she submitted her rebuttal statement to the EEOC on August 10, 2007, after the Union's alleged discrimination occurred, there is no evidence that she filed a subsequent charge against the Union or that she sought to amend her current charge to include the Union.

I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of the plaintiff's Title VII claim for lack of subject matter jurisdiction.[5]

### F.  Discrimination Claims Under 42 U.S.C. § 1981

The plaintiff asserts that the Union violated section 1981when it refused to arbitrate her claims because they asserted discrimination and were "weak." Section 1981 prohibits intentional race discrimination in the making and enforcement of contracts with both public and private actors. 42 U.S.C. § 1981. The statute's protection extends to the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. at 1981(b).

Only intentional discrimination may violate section 1981. General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982). The same standards and burdens apply to both

---

[5]Even if the court had subject matter jurisdiction over the plaintiff's Title VII claim, it would fail for the reasons discussed in my analysis of the plaintiff's 1981 claim.

section 1981 claims and Title VII claims. Aramburu v. Boeing Co., 112 F.3d 1398, 1410 (10th Cir. 1997) (citing Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10tjh Cir. 1994)).

The plaintiff claims that "[t]he only reasons[] which DCFCE ever articulated to me as being the cause for denying arbitration or for refusing to process my grievance are: a) I am not a member . . . b) my claim is weak because it alleges discrimination." *Response*, Ex. 1, ¶ 27. The plaintiff states that the Union's refusal is evidence of discrimination under Goodman v. Lukens Steel Co., 482 U.S. 656 (1987) (superceded by statute on issue of limitations period). In Lukens, the Supreme Court found that three unions violated Title VII and section 1981 when they refused to process grievances which alleged discriminatory behavior.

The facts in Lukens are easily distinguished from the facts of this case. The Lukens case was brought by multiple plaintiffs; it was tried for 32 days; 157 witnesses testified; and over 2,000 exhibits were introduced. Id. at 663. As stated by the Court:

> [T]he facts were that since 1965, the collective-bargaining contract contained an express clause binding both the employer and the Unions not to discriminate on racial grounds; that the employer was discriminating against blacks in discharging probationary employees, which the Unions were aware of but refused to do anything about by way of filing proffered grievances or otherwise; that the Unions had ignored grievances based on instances of harassment which were indisputably racial in nature; and that the Unions had regularly refused to include assertions of racial discrimination in grievances that also asserted other contract violations.

Id. at 666.

The unions "never took any action over the segregated locker facilities at Lukens and did not complain over other discriminatory practices by the company." Id. at n.11. The unions claimed that they did not include racial discrimination claims in grievances claiming other

violations of the contract "because these grievances could be resolved without making racial allegations and because the employer would 'get its back up' if racial bias was charged, thereby making it much more difficult to prevail." Id. at 667-68. "The Unions, in effect, categorized racial grievances as unworthy of pursuit and, while pursuing thousands of other legitimate grievances, ignored racial discrimination claims on behalf of blacks, knowing that the employer was discriminating in violation of the contract." Id. at 669.

The Court found that "[a] union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or in deference to the perceived desires of its white membership, is liable under both Title [VII] and § 1981, regardless of whether, as a subjective matter, its leaders were favorably disposed toward minorities." The Lukens court stated that Title VII and section 1981 "do not permit a union to refuse to file any and all grievances presented by a black person on the ground that the employer looks with disfavor on and resents such grievances. It is no less violative of these laws for a union to pursue a policy of rejecting disparate-treatment grievances presented by blacks solely because the claims assert racial bias and would be very troublesome to process."

Here, there is no evidence in the record that the Union intentionally avoids asserting discrimination claims. There is only the plaintiff's allegation that Union officials told her that asserting her claim for discrimination made her grievance weak.

It is undisputed that the Union was not required to represent the plaintiff in her Level III hearing before the superintendent, and there is no evidence in the record to establish that the Union was required to pursue a Level IV arbitration. To the contrary, the collective bargaining

agreement between the Union and DCSD provides that the Union may proceed to arbitration if it is "not satisfied with the disposition of the grievance at Level III." *Motion*, Ex. 1, ¶ 7; Ex. A-3, p. 44, § d. The Union consulted with its attorney prior to refusing to arbitrate the plaintiff's grievance. Id. at Ex. 1, ¶ 5. The Union's attorney concluded that there was "almost no chance of a successful arbitration" on behalf of the plaintiff. Id. at Ex. 1, ¶ 4; Ex. A-1. The evidence thus demonstrates that the Union's decision not to pursue a Step IV arbitration on the plaintiff's behalf was based on an evaluation of the merits of that claim, and not on a discriminatory basis as in Lukens.

The Union's determination that the plaintiff's claims of discrimination weakened her grievance is not, without more, evidence of discrimination. Indeed, I have separately recommended that summary judgment be granted in favor of DCSD on the plaintiff's claims of discrimination because the record does not contain evidence of discrimination in violation of Title VII and section 1981.

I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks summary judgment in favor of the defendant on Claim Eleven's allegations that the Union violated 42 U.S.C. § 1981.

### E.  State Law Claims

Claim Eleven asserts state law claims for "breach of contract, negligent misrepresentation, intentional infliction of distress, [and] breach of fair representation duty" as well as a claim under "Colorado labor relation law." *Complaint*, ¶ 45. This court may decline to exercise supplemental jurisdiction over the plaintiff's state law claims when it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because I have

recommended that summary judgment enter in favor of the defendant on the plaintiff's constitutional and federal statutory claims, I recommend that the court decline to exercise supplemental jurisdiction over the remaining state law claims.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED and that summary judgment enter in favor of the defendant and against the plaintiff on the plaintiff's constitutional and federal statutory claims.

I further RECOMMEND that the court decline to exercise supplemental jurisdiction over the remaining state law claims.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated August 10, 2009.

                              BY THE COURT:

                              s/ Boyd N. Boland
                              United States Magistrate Judge